USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/24/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JUST BAGELS MANUFACTURING, INC.,           :     **OPINION AND**
                                           :     **ORDER**
        Plaintiff,                         :
                                           :     12 Civ. 1358 (JLC)
        -v-                                :
                                           :
ALEJANDRO N. MAYORKAS, Director,           :
U.S. Citizenship and Immigration Services, :
                                           :
        Defendant.                         :
------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

    Plaintiff Just Bagels Manufacturing, Inc. ("Just Bagels") seeks judicial review of a final decision of the United States Citizenship and Immigration Services ("CIS" or "the Government") denying Just Bagels' petition to sponsor alien worker Manuel Chimbaina Morocho ("Chimbaina") for an employment visa in the United States. The parties have consented to have me preside over this case for all purposes and have now cross-moved for summary judgment. For the reasons stated below, CIS's motion is GRANTED and Just Bagels' cross-motion is DENIED.

                  I.     BACKGROUND[1]

    CIS is a division of the United States Department of Homeland Security, a government agency that oversees immigration to the United States and the naturalization of aliens. See 8 U.S.C. § 1103; 8 C.F.R. §§ 1.1, 2.1. Alejandro Mayorkas is CIS's current director. (Answer dated May 23, 2012 at 1 (Dkt. No. 5)). Just Bagels is a wholesale bagel bakery located in the

---

[1] The facts and administrative background set forth below are taken from the Certified Administrative Record ("CAR") of the proceedings before CIS (see Declaration of Natasha Oeltjen dated July 25, 2012, Ex. 1 (Dkt. No. 12)) and the undisputed facts in the parties' pleadings.

1

USDC SDNY
DATE SCANNED 10/24/12

Bronx that seeks to sponsor Chimbaina, an Ecuadorian national, for a "skilled worker" employment visa in the United States. (CAR 165-66).

## A.  Regulatory Framework

CIS regulations govern the process by which an employer such as Just Bagels may petition CIS to sponsor an alien worker or "beneficiary," such as Chimbaina, for a United States work visa. To petition for a "skilled worker" visa, an employer must first file an Application for Alien Employment Certification ("Form ETA-750" or "labor certification") with the Department of Labor ("DOL") and obtain DOL certification of two preconditions to the visa's issuance: (1) that there are insufficient persons in the United States "able, willing, qualified . . . and available" to perform the position for which sponsorship is sought; and (2) that the alien's employment in such position will "not adversely affect the wages and working conditions of workers in the United States similarly employed." See 8 C.F.R. § 204.5(l)(3)(i); 8 U.S.C. §1182(a)(5)(A)(i); 20 C.F.R. § 656.1(a).

After DOL certifies that these conditions are met, the employer must file an employment-based immigrant visa petition ("I-140 petition" or "petition") with CIS. 8 C.F.R. § 204.5(c). In the petition, the "employer bears the burden of showing that the job offer to the beneficiary is a realistic one." Taiyang Foods Inc. v. U.S. Citizenship & Immigration Servs., No. C10 Civ. 0109 (JLR), 2010 WL 3732193, at *2 (W.D. Wash. Sept. 20, 2010); see also 8 C.F.R. 204.5(g). Thus, the petition and supporting evidence must establish that, at all times from the date DOL accepted the Form ETA-750 for processing (the "priority date"), continuing until the beneficiary obtains lawful permanent residence in the United States, the employer was financially able to pay the employee's wage, as specified in the Form ETA-750 (the "proffered wage"). 8 C.F.R. 204.5(g)(2). "Evidence of this ability shall be either in the form of copies of annual reports,

federal tax returns, or audited financial statements." Id. However, "[i]n appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by [CIS]." Id. The petition must also "be accompanied by evidence that the alien meets the educational, training or experience, and any other requirements of the individual labor certification," and that the beneficiary has at least two years of training or experience in the relevant trade. 8 C.F.R. § 204.5(l)(3)(ii)(B).

## B. Just Bagels' Petition

In 2001, Just Bagels filed a Form ETA-750 with DOL seeking to certify Chimbaina's employment for the position of "bagel maker." (CAR 171). DOL accepted the Form ETA-750 for processing on April 30, 2001, marking the "priority date" for Just Bagels' later-submitted petition. (CAR 170). However, the Form ETA-750 in the record is what appears to be a corrected version signed by Just Bagels' Chief Executive Officer, Charles Contreras, almost five years later, on February 2, 2006. (CAR 172, 174).[2] The form states that Just Bagels had employed Chimbaina as a bagel maker from August 1997 through the "Present," and describes his job as a full-time position earning an hourly wage of $11.91. (See CAR 171, 174). DOL certified the form on August 25, 2006. (CAR 170).

On November 7, 2006, Just Bagels filed an I-140 petition with CIS. (CAR 165). As evidence of its ability to pay Chimbaina's proffered wage at all times between 2001 (when it filed its labor certification) and the date of its petition, Just Bagels submitted copies of its 2001-2005 tax returns. (CAR 169). The tax returns demonstrated sufficient financial resources to pay the proffered wage from 2002-2005, but the 2001 tax return reported a net income of -$86,308

---

[2] The form is stamped "CORRECTIONS APPROVED BY DOL REGIONAL OFFICE" on March 30, 2006. (CAR 174). The Court is not aware of what corrections were made to the 2001 version.

3

and net current assets of -$30,251. (CAR 5-6; see also CAR 178, 283).[3] Presumably foreseeing that these figures might cause CIS to doubt whether the company had sufficient resources to pay Chimbaina in 2001, Just Bagels also submitted additional evidence of its financial condition in 2001, which included: (1) six monthly bank statement summaries of Just Bagels' combined business accounts dated between March 2001 and January 2002 (CAR 272-77); (2) lists purporting to be payroll records for 2001 and 2002 (CAR 169, 278-82); and (3) an October 11, 2006 letter from Contreras "attest[ing] to [the] company's ability to cover the weekly salary of $476.40 or $24,772.80 per annum to Mr. Chimbaina." (CAR 283-84). Contreras' letter noted that the 2001 tax return reflected a $213,083 deduction for capital depreciation and pointed to the monthly bank statements—each reflecting a positive cash balance—as evidence that the company had "enough cash available to cover the wages for the alien beneficiary" in 2001. (CAR 283, 272-77). Contreras also claimed that "[i]n order to cover the wages for the alien we will used [sic] the wages freed up by the absence of employees working for us during 2001 and no longer in our employ[,]" a sum he reported to be "$75,260; sufficient to cover the wages for Mr. Chimbaina." (Id.). Finally, Contreras asked CIS to "keep in mind that the events of September 11, 2001 caused a drastic reduction in business and an increase in liabilities that year," and noted that Just Bagels' "ability to cover the wages improved drastically during the following years." (Id.).

---

[3] In its letter to CIS, Just Bagels asserted that the net income for 2001 was -$94,055, an amount taken from line 21 of its IRS Form 1120S. (CAR 283; see also CAR 176). However, CIS concluded that Just Bagels also had "relevant entries [on Schedule K] for additional income, credits, deductions or other adjustments," which changed its relevant "net income" from the number shown on line 21 of Form 1120S to the -$86,308 amount reflected on line 23 of Schedule K. (CAR 5 n.2; see also CAR 178). The difference between these amounts is not relevant to my analysis here.

### C.     The Request for Evidence

Based on the negative net income and net assets reported on Just Bagels' 2001 tax return, CIS determined that the initial documentation submitted by Just Bagels was "not sufficient to warrant favorable consideration of [the] petition/application." (CAR 163). Accordingly, on October 5, 2007, CIS issued a Request for Evidence ("RFE") directing Just Bagels to submit further evidence, including: (1) "Chimbaina's Forms W-2 or 1099-Misc for 2001 through 2006"; (2) a more detailed explanation of how Just Bagels' business and financial liabilities were affected by the events of September 11, 2001; (3) Just Bagels' 2000 tax return; and (4) "any additional evidence [Just Bagels] may have to demonstrate the reduction in business and increase in liabilities for 2001." (CAR 164).

In response, Just Bagels submitted: (1) a second letter from Contreras dated November 12, 2007 (CAR 49-50); (2) a letter from the company's accountant dated October 6, 2006 (CAR 75); (3) a two-page report of the New York City Comptroller entitled <u>One Year Later: The Fiscal Impact of 9/11 on New York City</u> ("<u>One Year Later</u> Report") (CAR 76-77); and (4) monthly bank statement summaries dated from January through December 2001, several of which were duplicative of the statements previously submitted (CAR 78-89).[4] The second letter from Contreras provided virtually no specific detail regarding how the September 11 attacks had impacted Just Bagels' business, stating only that "[s]ince tourism in New York City and the country dropped, our business was affected due to lack of sales. People . . . did not go out or spend money on travel as in the past." (CAR 74). The letter emphasized that Just Bagels' business had "survived and grown" since 2001. (<u>Id.</u>). Contreras stressed that the company's reported net loss in 2001 was driven by a $213,083 deduction for capital depreciation, and that

---

[4]     Just Bagels also submitted its 2006 tax return as evidence that it continued to have the financial ability to pay the proffered wage. (CAR 90-161).

5

"[s]ince depreciation is only a paper deduction for tax purposes and not a cash outlay, [Just Bagels] had, in actuality, a Net Income of $119,028, which is greater than the [proffered] wage of $24,772.80." (CAR 73). The letter from the company's accountant likewise explained that Just Bagels' business is "capital intensive" and "therefore, will always have a significant amount of depreciation," but that capital depreciation is "not a cash flow item. This deduction needs to be added back to net income to determine the actual amount of cash available to the operation." (CAR 75).[5]

Just Bagels did not submit its 2000 tax return or any Forms W-2 or 1099 for Chimbaina, as expressly requested by the RFE. In explaining the company's failure to submit these items, its counsel asserted that the company was "not able to obtain the 2000 Corporate Tax Returns . . . since they were filed seven years ago," and that "the Beneficiary did not work for the Petitioner during the years 2001-2006," the years for which CIS sought Chimbaina's Forms W-2 or 1099. (CAR 72).

### D.     The CIS Director's Decision

On February 12, 2008, CIS Director F. Gerard Heinauer issued a decision denying Just Bagels' petition. He explained that in determining a petitioner's ability to pay a proffered wage during a given period, CIS "will first examine whether the petitioner employed and paid the beneficiary during that period" at a "salary equal to or greater than the proffered wage," and if so, such "evidence will be considered prima facie proof of the petitioner's ability to pay the proffered wage." (CAR 69). However, Just Bagels had not submitted any evidence demonstrating that it had employed, much less paid, Chimbaina from 2001 through 2006.

---

[5]     It is unclear why this October 6, 2006 letter pre-dates the RFE. A document footer at the bottom of the letter suggests that it may have been drafted initially in support of a petition for a different beneficiary. (See CAR 75).

Accordingly, Heinauer focused on the company's tax returns as evidence of its ability to pay. He concluded that the tax returns established sufficient resources from 2002 through 2006, but that the negative net income and assets reflected on Just Bagels' 2001 tax return were "not sufficient to pay the proffered wage . . . at the time the priority date was established." (Id.).

Heinauer acknowledged that Just Bagels made "four arguments . . . attempt[ing] to establish that, although it had negative net income and current assets in 2001, it still had the ability to pay the proffered wage" (CAR 69), and he considered and rejected each one. First, he found that Just Bagels' "reliance on bank account balances as evidence of ability to pay . . . is misplaced" because bank statements are not among the types of evidence ordinarily accepted as evidence of ability to pay under 8 C.F.R. § 204.5(g)(2), and more importantly, "no evidence was submitted to demonstrate that the funds reported on the petitioner's bank statements somehow reflect additional funds that were not reflected on its tax returns[.]" (Id.). Second, Heinauer found no authority for Just Bagels' argument that "funds deducted as a depreciation expense should be added to the funds available to pay the proffered wage." (CAR 70). Third, he evaluated Contreras' assertion that Just Bagels would "use the wages freed up by the absence of employees working for [it] during 2001," and concluded that any funds freed up by employee departures after 2001 "would not have been available to pay the beneficiary's wages in 2001." (Id.).

Fourth, Heinauer considered Just Bagels' argument that the events of September 11, 2001 negatively impacted its business. He remarked that such an explanation "might be credible but the record lacks sufficient evidence to establish what impact, if any, was felt by the business as a result of those events." (Id.). Heinauer explained:

> While[] a review of the six tax returns the petitioner has submitted shows that
> 2001 was indeed the worst reported year financially for the petitioner, [CIS] is

7

> unable to determine if the year was uncharacteristically unprofitable or was simply the early stages of the trend of increased profitably [sic]. . . demonstrated by the 2002 through 2006 tax returns.

(Id.). Heinauer noted that, for this reason, CIS asked Just Bagels to submit its 2000 tax return "for comparison with its 2001 tax return as well as any other evidence the petitioner may have to demonstrate negative effects of September 11, 2001 on its business activities." (Id.). However, instead of providing its 2000 tax return, Just Bagels submitted a statement of its CEO regarding "the general decline in tourism in the New York area," and the One Year Later Report, which Heinauer observed, "discusses the overall economic decline felt by New York but does not provide any evidence that relates directly to the petitioner's financial standing." (Id.). Heinauer also concluded that Just Bagel's proffered basis for not providing the 2000 tax return was unpersuasive because "[i]f the petitioner has not retained a copy, then a transcript of the return[] should be available from IRS." (Id.). He then proceeded to consider Just Bagels' 2001 bank statements as "the only evidence submitted that provides a metric of the petitioner's finances in the context of the events of September 11." (Id.). While "conced[ing] that this is by no means a comprehensive examination [of] the petitioner[']s finances during that period," Heinauer observed that the bank statements did "not appear to demonstrate a post September 11th decrease in business income or increase in costs" because "[f]rom January 8th to September 10th the petitioner's monthly balance[] decreased an average of $41,056.02 per month," whereas from "September 10th to December 7th, 2001 the petitioner's monthly account balance decreased an average of only $10,091.26 per month." (Id.).

Finally, Heinauer independently evaluated whether the petition and supporting materials established that Chimbaina had the requisite two years experience for the position of bagel maker. He pointed out that the corrected labor certification form stated that Chimbaina worked

8

for Just Bagels from 1997 until 2006, but the RFE response letter from Contreras asserted that Chimbaina did not work for the company from 2001-2006. (CAR 71). Based on these inconsistencies, Heinauer concluded that Chimbaina's "employment history has been called into question" such that the evidence was "not sufficient to establish the beneficiary's experiential qualifications." (Id.). Finding the evidence insufficient to establish either that Just Bagels had the ability to pay the proffered wage in 2001 or that Chimbaina possessed the requisite two years of experience, Heinauer denied the petition. (Id.).

### E. The AAO Decision

On March 19, 2008, Just Bagels filed a timely appeal to CIS's Administrative Appeals Office ("AAO"), reiterating the same arguments made in support of the petition. (CAR 10-15). On May 28, 2010, the AAO issued its decision. (CAR 1-9). It first emphasized that the record was "rife with inconsistencies" regarding Chimbaina's employment with Just Bagels. (CAR 4). In particular:

> [T]he beneficiary claims in the Form ETA-750 that he was employed by the petitioner from August 1997 through February 2006. However, when asked for copies of Forms W-2 or Forms 1099, counsel replied in a letter dated November 14, 2007, that the beneficiary did not work for the petitioner from 2001 to 2006. Moreover, on appeal, counsel has provided a third variation claiming that the beneficiary worked for the petitioner from August 1997 until December 2004. Although counsel claims that these errors were due to a "miscommunication," this explanation does not explain the absence of any employment records for the beneficiary during any of the claimed periods of employment with the petitioner.

(Id.). The AAO found that these inconsistencies "undermine[d] the credibility of the petition generally," and indicated "that the petitioner likely had unreported, or underreported, wage expenses" in the years 2002 through 2006. (Id.). Accordingly, the AAO noted "the likely inaccuracy" of Just Bagels' 2002-2006 tax returns and withdrew the director's determination that they established Just Bagels' ability to pay from 2002 through 2006. (CAR 5). The AAO also

9

emphasized that "there is no evidence that the petitioner employed and paid the beneficiary at any time at any wage." (CAR 3).

The AAO then concluded that, in any event, Just Bagels could not establish its ability to pay in 2001. It found that the director had properly focused on Just Bagels' 2001 tax return as primary evidence of its ability to pay without adding amounts deducted for depreciation back into net income, or considering cash reflected on Just Bagels' bank statements. (CAR 4-6). The AAO noted that "[]CIS and judicial precedent support the use of tax returns and the net income figures in determining petitioner's ability to pay." (CAR 5 (quoting Chi-Feng Chang v. Thornburgh, 719 F. Supp. 532, 537 (N.D. Tex. 1989) (emphasis in AAO decision)). The AAO also declined to credit Just Bagels' assertion that it would have used wages from former employees to meet the proffered wage requirements for Chimbaina because Just Bagels had "not documented the wages, positions, duties, or termination dates of the employees in question. Going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings." (CAR 8-9 (citing Matter of Soffici, 22 I&N Dec. 158, 165 (Comm. 1998))).

Finally, the AAO acknowledged that:

> [CIS] may, at its discretion, consider evidence relevant to the petitioner's financial ability that falls outside of a petitioner's net income and net current assets[,] . . . [such as] the number of years the petitioner has been doing business, the established historical growth of the petitioner's business, . . . the occurrence of any uncharacteristic business expenditures or losses, . . . or any other evidence that []CIS deems relevant to the petitioner's ability to pay the proffered wage.

(CAR 7 (citing Matter of Sonegawa, 12 I&N Dec. 612 (Reg. Comm. 1967))). Nonetheless, the AAO concluded that, by neglecting to submit the evidentiary items specifically requested by the RFE, Just Bagels failed to establish that consideration of such alternative indicia was warranted. In particular, the AAO rejected Just Bagels' assertion that the September 11 attacks impacted its

10

earnings in 2001 because "the record . . . contains no evidence specifically connecting the petitioner's business decline . . . to the events of September 11, 2001, not even a statement from the petitioner showing a loss or claiming difficulty in doing business specifically because of that event." (CAR 9). Accordingly, the AAO dismissed the appeal.

### F. Proceedings in this Court

On February 23, 2012, Just Bagels filed this action seeking judicial review of CIS's decision pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. (See Complaint dated February 13, 2012 ("Compl.") ¶ 7 (Dkt. No. 1)). The Complaint "seeks a decision stating that the Defendant has abused its administrative discretion in denying the Immigrant Visa Petition in the first instance and in subsequently dismissing the appeal of the decision." (Id. ¶ 6). On May 23, 2012, the Government answered the Complaint (Dkt. No. 5), and on July 25, 2012, it moved for summary judgment on the basis of the administrative record (Dkt. No. 10), asserting that CIS's denial of the petition was supported by substantial evidence and a proper exercise of administrative discretion. (See Defendant's Memorandum of Law in Support of his Motion for Summary Judgment ("Def.'s Mem.") at 1 (Dkt. No. 11)). On August 21, 2012, Just Bagels opposed the Government's motion and cross-moved for summary judgment, arguing that CIS's decision was arbitrary, capricious, and an abuse of discretion. (See Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment ("Pl.'s Mem.") at 7 (Dkt. No. 14)).[6] The Government filed a reply brief on September 5, 2012. (See Defendant's Reply Memorandum of Law in Further Support of His Motion for Summary

---

[6] Just Bagels' memorandum of law states that it is filed in support of a "motion" for summary judgment (Pl.'s Mem. at 1), but is unaccompanied by any "notice of motion," as required by the Court's local rules. See Local Rule 7.1(b). Nonetheless, I will accept Just Bagels' submission as a "cross-motion" despite Just Bagels' failure to comply with Local Rule 7.1.

11

Judgment ("Def.'s Reply") (Dkt. No. 16)). The parties consented to my handling this case for all purposes pursuant to 28 U.S.C. § 636(c) on May 31, 2012 (Dkt. No. 6).[7]

## II. DISCUSSION

### A. Standards of Review

#### 1. Summary Judgment Standard

Summary judgment may be granted if there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When a party seeks review of agency action under the APA, the "entire case on review is a question of law" such that "[j]udicial review of agency action is often accomplished by filing cross-motions for summary judgment." Connecticut v. U.S. Dep't of Commerce, No. 04 Civ. 1271 (SRU), 2007 WL 2349894, at *1 (D. Conn. Aug. 15, 2007) (citing American Bioscience, Inc., 269 F.3d at 1083-84); see also Glara Fashion, 2012 WL 352309, at *5 (whether agency action is arbitrary or capricious is legal question to be resolved on agency record); Citizens Against Casino Gambling in Erie Cnty v. Hogen, No. 07 Civ. 451S, 2008 WL 2746566, at *25 (W.D.N.Y. July 8, 2008) (same).

---

[7] At my direction, the parties did not provide statements pursuant to Local Civil Rule 56.1 in support of their summary judgment motions. In these circumstances – an appeal based on an administrative record – such submissions are not necessary as the case on review presents only a question of law. See Glara Fashion, Inc. v. Holder, No. 11 Civ. 889 (PAE), 2012 WL 352309, at *1 n.1 (S.D.N.Y. Feb. 3, 2012) (no Rule 56.1 Statement required in administrative agency review case) (citing Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001) ("[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The entire case on review is a question of law."); Student X. v. New York City Dep't of Educ., No. 07–cv–2316, 2008 WL 4890440, at *11 (E.D.N.Y. Oct. 30, 2008) ("[T]he 56.1 Statement will not aid the court in its independent review of the [administrative] record.")). Indeed, an exception to S.D.N.Y. Local Rule 56.1 for summary judgment motions concerning claims challenging administrative actions under the Administrative Procedure Act, as is provided in other Districts, would be appropriate. See, e.g., District of Vermont Local Rule 56.1(a) ("Any motion for summary judgment, except motions concerning claims challenging administrative actions under the Administrative Procedures [sic] Act, must be accompanied by a separate and concise statement of undisputed material facts.") (emphasis added).

12

2. <u>Judicial Review Under the Administrative Procedure Act</u>

The APA authorizes limited judicial review of final administrative decisions. 5 U.S.C. §§ 704, 706(2). A reviewing court "must hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). An agency abuses its discretion if it "provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." <u>Zhao v. U.S. Dep't of Justice</u>, 265 F.3d 83, 93 (2d Cir. 2001) (citing <u>Douglas v. INS</u>, 28 F.3d 241, 243 (2d Cir. 1994); <u>Anderson v. McElroy</u>, 953 F.2d 803, 806 (2d Cir. 1992)).

A decision is arbitrary or capricious "'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" <u>Natural Res. Def. Council v. EPA</u>, 658 F.3d 200, 215 (2d Cir. 2011) (quoting <u>Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983)). "The Court's task . . . is not to 'engage in an independent evaluation of the cold record,' nor to substitute its judgment for that of the agency . . . [but] to determine whether the agency has 'considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action.'" <u>Glara Fashion</u>, 2012 WL 352309, at * 6 (citing <u>41 N. 73 W., Inc. v. U.S. Dep't of Transp.</u>, 408 F. App'x 393, 399 (2d Cir. 2010) (summary order); <u>Guan v. Gonzalez</u>, 432 F.3d 391, 394-95 (2d Cir. 2005); <u>Natural Res. Def. Council</u>, 658 F.3d at 215; <u>J. Andrew Lange, Inc. v. FAA</u>, 208 F.3d 389, 391 (2d Cir. 2000)).

In light of a visa petitioner's burden to establish eligibility for a visa under 8 U.S.C.

13

§ 1361, a "failure to adduce evidence can itself constitute the 'substantial evidence' necessary to support the agency's challenged decision." Glara Fashion, 2012 WL 352309, at *6 (citing Jian Hui Shao v. Mukasey, 546 F.3d 138, 157-58 (2d Cir. 2008)) (quotation marks and further citation omitted).

**B.    CIS's Decision Was Not Arbitrary, Capricious, or an Abuse of Discretion**

Just Bagels argues before this Court that "substantial evidence" established its ability to pay the proffered wage in 2001, and that CIS acted in an arbitrary and capricious manner in "discounting the various arguments" it put forth on this point. (Pl.'s Mem. at 8). Just Bagels also contends that CIS deviated from its administrative precedent in declining to apply the "totality of circumstances" standard articulated in Matter of Sonegawa, under which it urges it would have "met and surpassed the standard" for approval. (Pl.'s Mem. at 9-10).

    1.    CIS's Treatment of Depreciation Was Not Arbitrary or Capricious

In its petition to CIS and on appeal to the AAO, Just Bagels argued that the negative income and net current assets it reported to the IRS in 2001 did not accurately reflect its financial condition at the time because the tax return reflected a "paper" deduction for capital depreciation in the amount of $213,083. (CAR 12, 74-75). Just Bagels reiterates that argument here and maintains that, because the depreciation deduction represented an expenditure that was incurred before 2001, it did not reflect an out-of-pocket expense in 2001, and therefore CIS should have added depreciation back into Just Bagels' reported income to obtain an accurate picture of the company's financial condition. (Pl.'s Mem. at 13-14). Though this argument has some force, it does not warrant a conclusion that CIS's contrary approach is arbitrary or capricious.

Since 2003, CIS has declined to consider depreciation as part of a petitioner's net income, and while it has acknowledged that a dollar amount attributed to capital depreciation for tax purposes "does not represent current use of cash," it has also concluded that "neither does

14

[depreciation] represent amounts available to pay wages." River St. Donuts v. Napolitano, 558 F.3d 111, 118 (1st Cir. 2009). CIS reasons that depreciation "represents an actual cost of doing business, which could represent either the diminution in value of [capital assets] or the accumulation of funds necessary to replace [them]." Id. On that basis, CIS has opted to treat depreciation as a "systematic allocation of the cost of a tangible long-term asset" rather than as cash-available funds for employee wages. Id. This policy has been consistently upheld by reviewing courts as having a rational explanation. See, e.g., id. (CIS's exclusion of depreciation from net income was not arbitrary or capricious because "amount spent on a long-term capital asset is a 'real' expense"); Taco Especial v. Napolitano, 696 F. Supp. 2d 873, 880-81 (E.D. Mich. 2010) (CIS's exclusion of depreciation from net income was not arbitrary or capricious); Chi-Feng Chang v. Thornburgh, 719 F. Supp 532, 537 (N.D. Tex. 1989) (concluding that "judicial precedent support[s] the use of … net income figures in determining petitioner's ability to pay" and rejecting visa petitioner's request to add depreciation back to net cash).[8] Thus, CIS's treatment of depreciation did not "inexplicably depart[] from established policies," nor was it "devoid of any reasoning." Zhao, 265 F.3d at 93. Moreover, Just Bagels itself proffered that its business was "capital intensive." (CAR 75). Accordingly, CIS could reasonably infer that the amounts reported for depreciation were not "cash available" to pay wages as Just Bagels suggests, but reflected accruing capital expenses. (CAR 284).

---

[8] In its reply brief, the Government brings to the Court's attention a Seventh Circuit case which observed that "[b]ecause tax considerations drive a wedge between accounting income and economic income, a company's tax returns are not a reliable basis for determining" its ability to pay employee wages. Constr. & Design Co. v. U.S. Citizenship & Immigration Servs., 563 F.3d 593, 596 (7th Cir. 2009). I agree with the Government that Construction & Design Co. does not squarely present the issue raised here: whether CIS's approach to depreciation is arbitrary or capricious. (Def.'s Reply at 3). Moreover, the Seventh Circuit also noted that CIS's consideration of tax returns is just one aspect of a potentially more holistic assessment of a petitioner's financial condition, to the extent a petitioner can introduce other competent evidence of its finances. Constr. & Design Co., 563 F.3d at 596.

15

Just Bagels' argument is, in essence, a request that the Court order CIS "to adopt what in [Just Bagels'] view would be a more logical policy" with respect to depreciation. Beobanka d.d. Belgrade v. United States, Nos. 95 Civ. 5138 (HB), 95 Civ. 5771 (HB), 1997 WL 23182, at *2 (S.D.N.Y. Jan. 22, 1997). "This argument fails, however, because the Court may not 'weigh alternatives available to the agency and then determine which is the more reasonable.'" Id. (citing Soler v. G. & U., Inc., 833 F.2d 1104, 1107 (2d Cir. 1987)). As CIS's treatment of depreciation was not "counter to the evidence before the agency" or "so implausible that it could not be ascribed to a difference in view or the product of agency expertise," it was not arbitrary or capricious. Natural Res. Def. Council, 658 F.3d at 215.[9]

2. CIS's Rejection of the Bank Statements as Insufficient Evidence Was Not Arbitrary or Capricious

Just Bagels also argued to CIS that its 2001 bank statements established that it had sufficient cash on hand to pay the proffered wage. (CAR 12-13, 73). CIS rejected this argument after determining that the tax returns presented a more complete picture of the company's overall financial health because there was no basis to conclude that the bank statements "reflect[ed] . . . funds that were not reflected on its tax return." (CAR 8). This conclusion is rationally derived from the evidence. While each of the monthly bank statements reflects a positive ending cash balance ranging from $92,382.72 to $451,114.64, the average ending cash balance was $188,779.64, whereas the average monthly debit amount was $536,102.80. (CAR 78-89). As the average ending cash balance is well below the average monthly debit figure, the bank

---

[9] Just Bagels also argues that Congress "intended to distinguish" between ongoing business expenses incurred in a tax reporting year and capital depreciation expenses incurred in an earlier year, but cites to the Internal Revenue Code as its only authority for this argument. (Id. at 14). The fact that Congress intended to distinguish between long and short-term expenditures as a matter of federal tax policy does not relate to how CIS assesses whether a job offer to an alien employee is realistic for immigration purposes.

16

statements do not clearly reflect surplus cash as opposed to minimal operating capital; if anything, they suggest the opposite—a shortage of operating capital relative to ongoing expenses. In any case, in light of Just Bagels' failure to present any evidence that such funds were available to pay employee wages as opposed to other ongoing expenses, CIS was within its discretion to reject the bank statements as insufficient proof of Just Bagels' ability to pay Chimbaina's wage in 2001.[10]

    3.    CIS Did Not Abuse Its Discretion in Declining to Consider the Overall Magnitude of Just Bagels' Business Activities

Just Bagels also argued before CIS that 2001 was an aberrational year for its business because of the events of September 11. (CAR 13, 74, 283). Here, Just Bagels repeats that argument, and contends that because 2001 was an aberration, CIS erred in failing to consider its ability to pay under the relaxed standard applied in Matter of Sonegawa, 12 I&N Dec. 612 (1967) and Matter of X, AAU LIN 06 277 50232 (INS), 2009 WL 1449670 (Feb. 5, 2009), which Just Bagels describes as a "totality of the circumstances" standard. (Pl.'s Mem. at 9-12).[11] The Government does not contest that a totality of the circumstances assessment was proper, but argues that CIS considered the totality of the circumstances and rationally concluded that Just Bagels had not met its burden. (Reply at 5). In fact, the AAO explained that it considered and denied Just Bagels' appeal according to the totality of the circumstances, and emphasized that

---

[10] Just Bagels also initially argued that the departure of former employees freed up $75,260 of the company's budget, which would be used to pay Chimbaina (CAR 283), but supplied very little evidence on this point and appears to have dropped this argument on appeal to the AAO. (CAR 10-15). Therefore I do not address it.

[11] Just Bagels appears to use the phrase "totality of the circumstances" as shorthand for what the Board of Immigration Appeals ("BIA") did in Sonegawa, which was to relax the requirement that the petitioner establish its ability to pay at all times during the pendency of the petition and instead conduct an assessment of the petitioner's overall financial strength across a period of years to assess its ability to pay going forward. Matter of Sonegawa, 12 I&N Dec. at 614.

17

these circumstances included a record "rife with inconsistencies" and Just Bagels' failure to provide requested evidence. (CAR 9).

CIS regulations expressly require that an I-140 petition "be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage . . . <u>at the time the priority date is established</u> and continuing until the beneficiary obtains lawful permanent residence." 8 C.F.R. § 204.5(g)(2) (emphasis added). CIS has acknowledged that in "marginal or borderline" cases, it may be appropriate to relax this standard and instead consider the "overall magnitude of the entity's business activities" in considering an employer's ability to pay. Matter of X, 2009 WL 1449670, at *5 (citing Matter of Sonegawa, 12 I.&N. 612).[12] In this case, however, CIS expressly requested additional evidence in order to evaluate Just Bagels' claim that the events of September 11, 2001 uniquely impacted its business and warranted consideration of its overall financial performance in lieu of a strict year-by-year assessment. In response, Just Bagels failed to provide any particularized evidence or even any specific explanation as to how September 11 impacted its business. It also failed to provide the requested 2000 tax return or any other evidence that would have allowed CIS to consider whether the company's 2001 earnings were anomalous in comparison to previous years. Given this failure of proof, CIS reasonably concluded that application of Sonegawa was not warranted. (CAR 6-7). See Taiyang Foods Inc. v. U.S. Citizenship & Immigration Servs., C10-0109 (JLR), 2010 WL 3732193, at *4 (W.D. Wash. Sept. 20, 2010) ("The fact that USCIS declined to make an exception for

---

[12] In Matter of Sonegawa, the BIA granted an employment visa notwithstanding the fact that the employer's tax return in a given year reported substantially less net profit than the annual proffered wage. Matter of Sonegawa, 12 I&N at 615. The BIA undertook a "careful consideration of all the . . . circumstances," including that, in the year at issue, the employer moved to a better location, paid double rent for five months, incurred large moving costs and had been unable to conduct business for a period of time. Id. at 614-15. Under these circumstances, the BIA found that a single underperforming year did not overcome extensive evidence of the petitioner's thriving business. Id. at 615.

18

[petitioner], as it did 35 [ ] years ago for [the petitioner in Sonegawa] . . . does not evidence an abuse of the agency's discretion."); aff'd, 444 F. App'x 115 (9th Cir. 2011).

CIS also reasonably concluded that Just Bagels had not met its evidentiary burden with respect to the petition generally. Just Bagels provided no documentary evidence establishing that it actually had or intended to employ Chimbaina, and the evidence it did submit warranted a conclusion that Just Bagels could not have afforded to employ Chimbaina at the time it filed the labor certification. Moreover, Just Bagels' inconsistent representations regarding Chimbaina's employment reasonably caused CIS to question its credibility in general and to doubt whether even the 2002 through 2006 tax returns accurately reported the company's wage expenses. (CAR 4).

Ultimately, "[t]he Court's task . . . is not to 'engage in an independent evaluation of the cold record,' nor to substitute its judgment for that of the agency . . . [but] to determine whether the agency has 'considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action.'" Glara Fashion, 2012 WL 352309, at * 6 (citations omitted). As CIS did so in this case, its decision was not arbitrary, capricious or an abuse of discretion.[13]

### III. CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment is granted and Just Bagels' cross-motion for summary judgment is denied. Just Bagels' complaint is dismissed in its entirety. The Clerk is directed to close docket entry number 10 and enter

---

[13] Just Bagels also argues that CIS abused its discretion in challenging Chimbaina's qualifications and experience. (Pl.'s Mem. at 14). Because I have determined that CIS's denial of the petition for failure to establish Just Bagels' ability to pay the proffered wage was not arbitrary or capricious, I do not reach this alternative basis for its denial of the petition.

19

judgment consistent with this Opinion and Order.

**SO ORDERED.**

Dated: October 23, 2012
       New York, New York

_____
JAMES L. COTT
United States Magistrate Judge